UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――――

BRIDGET SANDERSON,

                Plaintiff,

        V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

              Defendant.

―――――――――――――――――――――――――――――

**REPORT AND
RECOMMENDATION**

08-CV-1177
(GTS/VEB)

## I. INTRODUCTION

In November of 2005, Plaintiff Bridget Sanderson applied for disability insurance benefits ("DIB") and supplemental security ("SSI") benefits under the Social Security Act. Plaintiff alleges that she is unable to work due to mental impairments. The Commissioner of Social Security denied Plaintiff's applications.  Plaintiff, through her attorneys, Olinsky & Shurtliff, Jaya A. Shurtliff, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On July 15, 2009, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 13).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for DIB and SSI benefits on November 28, 2005, alleging disability beginning on July 1, 2005. (T at 62-66, 225-227).[1]  The applications were denied initially in February of 2006. (T at 228).   Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on January 9, 2008, in Syracuse, New York, before ALJ Joseph G. Medicis, Jr.  (T at 230).  Plaintiff appeared with her attorney and testified. (T at 233-259).  Plaintiff's mother was also present. (T at 233).

On May 14, 2008, the ALJ issued a decision denying Plaintiff's applications. (T at 22-30).  Plaintiff filed a timely request for review by the Appeals Council. The ALJ's decision became the Commissioner's final decision on September 23, 2008, when the Appeals Council denied Plaintiff's request for review.  (T at 5-7).

Plaintiff, through counsel, commenced this action on November 4, 2008, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1).  The Commissioner interposed an Answer on December 30, 2008. (Docket No. 8). Plaintiff filed a supporting Brief on February 13, 2009.  (Docket No. 10).  The Commissioner filed a Brief in opposition on February 23, 2009. (Docket No. 12).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

For the reasons that follow, it is respectfully recommended that the Commissioner's

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 9).

motion be denied, Plaintiff's motion be granted, and that this case be remanded for further proceedings.

## III. DISCUSSION

### A.     Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained

"even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[2]

---

[2]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2010.  He further concluded that Plaintiff had not engaged in substantial gainful activity since July 1, 2005, the alleged onset date. The ALJ determined that Plaintiff had the following medically determinable impairments considered "severe" under the Act: biopolar disorder and generalized anxiety disorder. (T at 24).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 25).

The ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to engage in sustained physical work activities at any level of exertion in jobs with simple

---

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

tasks and in a low stress work environment. (T at 26).  He further found that Plaintiff was capable of performing her past relevant work as an assembly worker or plater. (T at 29).

Accordingly, the ALJ found that Plaintiff was not under a disability, as that term is defined under the Social Security Act, from the alleged onset date through the date of his decision. (T at 30).  As noted above, the ALJ's decision became the Commissioner's final decision on September 23, 2008, when the Appeals Council denied Plaintiff's request for review.  (T at 5-7).

2.      **Plaintiff's Claims**

Plaintiff contends that the Commissioner's decision should be reversed.  She offers three (3) principal arguments in support of this position.  First, Plaintiff contends that the ALJ failed to apply the appropriate legal standard when evaluating her residual functional capacity.  Second, Plaintiff asserts that the ALJ erred by discounting her credibility.  Third, Plaintiff argues that the ALJ was obligated to consult a vocational expert before determining that she could perform her past relevant work.  This Court will address each argument in turn.

a.      **RFC**

When evaluating mental impairments, the Regulations require the ALJ to apply a "special technique" at the second and third steps of the review in addition to the customary sequential analysis. Kohler v. Astrue, 546 F.3d 260, 265-66 (2d Cir.2008) (citing 20 C.F.R. § 404.1520a).   The special technique requires an initial determination as to whether the Plaintiff has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). If so, the ALJ must then rate the degree of Plaintiff's functional limitation resulting from the

impairment in four broad categories: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. See 20 C.F.R. § 404.1520a(c)(3).

These areas are rated on a scale of "none, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4); 416 .920a(c)(4).  A mental impairment is generally found not severe if the degree of limitation in the first three areas is mild or better and there are no episodes of decompensation. § 404.1520a(d)(1). The ALJ must document "a specific finding as to the degree of limitation in each of the functional areas." 20 C.F.R. § 404.1520a(e)(2).

If the mental impairment is found to be severe, at the third step of the review, the ALJ must consider whether the claimant's mental impairments meet or medically equal one of the listed impairments.  If the impairments do meet or medically equal one of the impairments set forth in the Listings, the claimant will be found to be disabled. If not, the ALJ is then required to assess the claimant's residual mental functional capacity. 20 C.F.R. § 404.1520a(d)(3).

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making an RFC determination, the ALJ considers a claimant's physical abilities, mental abilities, and symptomatology, including pain and other limitations that

7

could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).  An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

In this case, at step two of the sequential evaluation process, the ALJ determined that Plaintiff's bipolar disorder and generalized anxiety disorder were severe impairments. (T at 24).  Concerning the four broad categories, the ALJ made the following findings: (1) there was no evidence of marked limitations as to activities of daily living, (2) there was no evidence of more than moderate difficulties related to social functioning, (3) there was "no objective medical evidence suggesting that [Plaintiff] has a limited ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings," and (4) there were "one to two episodes of decompensation in the work setting." (T at 25-26).  Thus, because the Plaintiff had not experienced repeated episodes of decompensation and because her mental impairments did not result in at least two marked limitations in one of the categories, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the impairments set forth in the Listings. (T at 25).

As such, the ALJ proceeded to evaluate Plaintiff's mental RFC.  The mental RFC assessment at steps four and five of the sequential evaluation process requires a more detailed assessment than the broad category analysis applied in steps two and three.  "Use of the four broad functional categories . . . to determine whether a claimant's impairments are 'severe' is not equivalent to a mental RFC assessment." Pabon v. Barnhart, 273 F. Supp.2d 506, 515 (S.D.N.Y. 2003).  Social Security Rule 96-8p provides, in pertinent part,

that the ALJ's mental RFC finding "must be expressed in terms of work-related functions." The Ruling lists the following mental abilities as "work-related":  understanding, carrying out, and remembering instructions; using judgment in making work-related decisions; responding appropriately to supervision, co-workers, and work situations; and dealing with changes in a routine work setting.  SSR 96-8p.

In this case, the ALJ recognized this requirement, cited SSR 96-8p, and explained that he had "translated" his findings at steps two and three "into work-related functions." (T at 26).  However, the ALJ's ultimate finding with respect to Plaintiff's mental RFC was simply that she was limited to "jobs with simple tasks in a low stress environment." (T at 27).  This finding was deficient because it was not expressed in terms of work-related functions.

Although the ALJ did discuss some of the work-related functions in his analysis, he did not express his ultimate RFC determination in terms of those functions, as required by the Regulations.  Several courts have concluded that failure to comply with this requirement warrants remand.  See, e.g., Pabon, 273 F. Supp.2d at 516 (remanding where the ALJ failed to "address[] the specific mental demands of unskilled work" in assessing RFC); Rosado v. Barnhart, 290 F. Supp.2d 431, 441 (S.D.N.Y. 2003) (finding that ALJ's mental RFC assessment lacked more detailed analysis required by the regulations); Dickson v. Astrue, 06-CV-0511, 2008 WL 4287389, at *11-12 (N.D.N.Y. Sept. 17, 2008) (finding that ALJ erred in failing to discuss "specific work-related capacities" such as "understanding instructions, using judgment, and responding to supervision").

This Court is inclined towards the view that failure to express the mental RFC in terms of work-related functions is not a *per se* basis for remand where, as here, the ALJ

discussed the work-related functions in his analysis.  However, regardless of how it is expressed, the RFC assessment cannot be sustained unless it is supported by substantial evidence.  In this case, remand is recommended because the RFC assessment is not supported by substantial evidence.

The record strongly indicates that Plaintiff has difficulty responding appropriately to supervision, co-workers, and work situations.  Paul Honess, a social worker and Plaintiff's treating therapist, noted that Plaintiff had bi-weekly outbursts of rage and irrationality alternating with periods of being accepting and reasonable. (T at 167).  Mr. Honess indicated that Plaintiff had a history of verbally attacking her supervisors when she believes she is being treated unfairly and disclosed that she lost employment because of this behavior. (T at 169, 171, 201).  Mr. Honess opined that Plaintiff had no useful ability to function with regard to accepting instructions and responding appropriately to criticism from supervisors. (T at 220).  Mr. Honess described Plaintiff's limitations in further detail as follows: "She cannot deal [with the] normal stress of [a] work environment. She has [a] history of rages [with] both co-workers and supervisors. She would have no capacity to be self-directed and she resents being 'other' directed." (T at 221). Plaintiff testified that she was fired from a job because of an argument with her boss. (T at 242-43, 248).

Ed Kamin, PhD, a State Agency review psychiatrist, opined that Plaintiff was moderately limited with regard to her ability to accept instructions and respond appropriately to criticism from supervisors and interact appropriately with supervisors. (T at 194, 195).  Dr. Kamin also found that Plaintiff was moderately limited in terms of her ability to respond appropriately to changes in the work setting. (T at 194).

The ability to respond appropriately to supervision, co-workers, and work situations

10

is an obviously significant work-related function.  The ALJ addressed Plaintiff's abilities as to this function as follows: "While the claimant has a self-reported history of difficulty with supervisors, she related to the consultative examiner her ability to get along socially well with friends and family, thus evidencing no more than moderate limitations in her ability to make occupational, performance and personal/social adjustments in the work setting." (T at 28).

This finding is problematic in several respects.  First, even if Plaintiff gets along well with her family and friends, it does not necessarily follow that she is able to respond appropriately to supervision, co-workers, and work situations.  Second, contrary to the ALJ's statement, Dr. Noia (the consultative examiner) actually indicated that Plaintiff "does *not* get along with friends and family." (T at 177)(emphasis added).  Moreover, in December 2005, on a disability form, Plaintiff stated she had "no friends" and had problems getting along with family, friends, and others, "all except my Mom [and] sometimes her [too]." (T at 107).

Third, the ALJ did not discuss Dr. Kamin's finding of moderate limitations as to this work-related function and, thus, did not explain what weight (if any) he assigned to Dr. Kamin's assessment.  See 20 C.F.R. §§ 404.1527(f)(2)(ii); 416.927(f)(2)(ii) ("Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist . . ."); SSR 96-6p (explaining that the ALJ "may not ignore [State agency psychologist's] opinions and must explain the weight given to the opinions in their decisions").  Failure to adhere to this

requirement has been sufficient basis for courts to remand. See, e.g., Richardson v. Barnhart, 443 F. Supp.2d 411, 425 (W.D.N.Y. 2006) (finding legal error where ALJ failed to explain the weight given to the Commissioner's medical consultants).

Fourth, Mr. Honess described Plaintiff's family relationships and especially her relationship with her boyfriend as highly dysfunctional and characterized by outbursts of rage. (T at 201-202). In September of 2007, Mr. Honess explained Plaintiff's limitations as follows:

> Plaintiff has had paranoid ideation for several years - not able to sustain work - fear of others - unreasonable fear. She is highly combative in an illogical way - no offense or small offense is extremely threatening - She reacts in rage. She has low function at home - she cannot live without another adult to help her maintain her temper and provide adequate care for her children

(T at 220).

While opinions from social workers are not considered "acceptable medical sources," such opinions are nevertheless "important and should be evaluated on key issues such as impairment severity and functional effects." SSR 06-03p, 2006 WL 2329939, at *3 (Aug. 9, 2006); see also Pogozelski v. Barnhart, No. 03-CV-2914, 2004 WL 1146059, at *12 (E.D.N.Y. May 19, 2004) (finding that "some weight should still have been accorded to [the therapist's] opinion based on his familiarity and treating relationship with the claimant"); Allen v. Astrue, 05-CV-0101, 2008 WL 660510, at *9 (N.D.N.Y. Mar.10, 2008) (remanding because ALJ did not evaluate the treating therapist's opinion); Bergman v. Sullivan, No. 88-CV-513, 1989 WL 280264, *3 (W.D.N.Y. Aug. 7, 1989) (holding that treating social worker is "a non-medical source whose opinion concerning the nature and degree of plaintiff's impairment is not only helpful, but critically important, since he is the only treating

source"); Anderson v. Astrue, No. 07-CV-4969, 2009 WL 2824584, at *9 (E.D.N.Y. Aug, 28, 2009)("Based on the particular facts of a case, such as length of treatment, it may be appropriate for an ALJ to give more weight to a non-acceptable medical source than a treating physician.").

In this case, the ALJ rejected Mr. Honess's assessment of Plaintiff's work-related limitations as not supported by the record.  However, Mr. Honess's finding as to Plaintiff's ability to respond appropriately to supervision and co-workers appears to be entirely supported by the record.  Indeed, by finding that Plaintiff had one to two episodes of work-related decompensation, the ALJ implicitly acknowledged Plaintiff's history of conflict with supervisors.

The sole supporting citation offered by the ALJ in connection with his decision to discount Mr. Honess's assessment is the ALJ's erroneous assertion that Plaintiff told Dr. Noia that she got along well with friends and family.  As set forth above, Dr. Noia made exactly the opposite finding. In any event, even if Plaintiff did get along with her friends and family, the ALJ made no effort to explain how the ability to interact well with friends and family translates to an ability to respond appropriately to supervision and co-workers, particularly in light of Plaintiff's history of conflict with supervisors.  In addition, the ALJ did not even discuss the State Agency review psychiatrist's finding that Plaintiff was moderately limited as to this function.  For these reasons, this Court finds that a remand is necessary. On remand, the ALJ should (i) express his mental RFC determination in terms of work-related functions, (ii) address Dr. Kamin's finding, (iii) reconsider Mr. Honess's assessment in light of the concerns outlined above, and (iv) assign appropriate weight to the medical and non-medical personnel..

### b.    Credibility

The claimant's credibility is an important element in DIB and SSI claims, and such evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's credibility, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....

> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ...

14

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1.      [Plaintiff's] daily activities;
2.      The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3.      Precipitating and aggravating factors;
4.      The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5.      Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6.      Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7.      Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In this case, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment. (T at 27).  In particular, the ALJ noted that Plaintiff cared for two puppies, cleaned her daughter's room, and prepared dinner.  Based upon these activities of daily living and "in

15

the absence of medical evidence to the contrary," the ALJ concluded that Plaintiff retained the ability to sustain attention and concentration "needed to perform unskilled work activities equated with low stress." (T at 28).

Because the ALJ's RFC assessment is not expressed in terms of work-related functions, it is not clear what "unskilled work activities" he is referring to. Obviously, the ability to care for puppies, clean a room, and prepare dinner does not suggest an ability to carry out detailed instructions; maintain attention and concentration for extended periods; and/or the ability to work in coordination with or proximity to others without being distracted by them. On the other hand, Mr. Honess opined that Plaintiff would be unable to meet competitive standards or have no useful ability to function in these areas of functioning. (T at 220). Moreover, Dr. Kamin indicated that Plaintiff was moderately limited in these areas. (T at 193). Plaintiff testified that she has constant difficulties maintaining attention and concentration and that she cannot follow the plot of a movie. (T at 252). The ALJ's summary assertion that Plaintiff's activities of daily living demonstrate an ability to perform "unskilled work activities" with low stress is insufficient to support his decision to discount Plaintiff's testimony, which is supported by her treating therapist and, to a degree, by the State Agency review psychiatrist.

As noted above, on remand, the ALJ must state his mental RFC determination in terms of work-related functions. In the context of that determination, the ALJ should revisit the question of Plaintiff's credibility. To the extent the ALJ again finds that Plaintiff is capable of performing "unskilled work activities," he should clearly identify what those activities are and provide a more complete explanation as to why he discounts Plaintiff's testimony concerning her ability to perform such activities.

16

###### c.    Past Relevant Work

"Pursuant to both case law and [SSR] 82-62, in order to determine at step four whether a claimant is able to perform her past [relevant] work, the ALJ must make a specific and substantial inquiry into the relevant physical and mental demands associated with the claimant's past work, and compare these demands to the claimant's residual capabilities." Kerulo v. Apfel, No. 98 CIV. 7315, 1999 WL 813350, at *8 (S.D.N.Y. Oct. 7, 1999).

When a claimant has limitations due to a mental or emotional impairment, "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." SSR 82-62. The ALJ's decision "must contain" a "finding of fact as to the physical and mental demands of the past job/occupation." SSR 82-62.

In this case, the ALJ explained that "[i]n comparing the claimant's [RFC] with the physical and mental demands of this work, I find that the claimant is able to perform her past simple and unskilled work as it is generally performed." (Tat 29). Notwithstanding this reference to the "physical and mental demands" of Plaintiff's past relevant work, the ALJ made no "finding of fact" on the issue. Indeed, the record reveals so little inquiry into the mental demands of Plaintiff's past relevant work, it is not clear that the ALJ had enough evidence to make the requisite findings of fact.   Aside from brief testimony, in which it was established that Plaintiff worked mostly alone and was fired because of conflicts with her supervisors, no evidence was obtained concerning the mental demands of Plaintiff's past

relevant work. (T at 242-43).

Absent testimony from Plaintiff to establish the mental demands of her past relevant work, the ALJ could have obtained testimony from a vocational expert. 20 C.F.R. §§ 404.1560(b); 416.960(b) (explaining that an ALJ may use a vocational expert to obtain evidence "concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy"). However, the ALJ chose not to employ a vocational expert.

The ALJ could also have consulted the Dictionary of Occupational Titles ("DOT") "to define the job as it is usually performed in the national economy." SSR 82-61. Indeed, the Commissioner attempts to salvage the ALJ's finding by pointing to DOT codes for plating positions and an assembler of small parts position, which the Commissioner argues are consistent with the ALJ's RFC determination. However, no such citations are found in the ALJ's decision.   This Court may not "create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself." Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir.2005); see also Snell v. Apfel, 177 F.3d 128, 134 (2d Cir.1999) (quoting Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962)); see also Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999) ("Nor may [the Court] properly affirm an administrative action on grounds different from those considered by the agency") (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)); see also Steficek v. Barnhart, 462 F.Supp.2d 415, 421 (W.D.N.Y. 2006) (remanding, in part, because the ALJ "made no findings as to the mental demands" of the Plaintiff's past work, despite finding the Plaintiff suffered from various mental and emotional impairments); French v. Apfel, 62 F. Supp.2d 659, 664 (N.D.N.Y. 1999) (remanding

because the ALJ neither made findings regarding the physical and mental demands of Plaintiff's previous work nor referred to the DOT to establish how her past relevant work was usually performed).

Moreover, in any event, the ALJ's finding that Plaintiff was required to perform her past relevant work was, of course, based upon his underlying RFC determination.  Thus, even if the ALJ had made the requisite findings at this stage of the process, this issue would need to be revisited on remand.  As part of the review on remand, however, the ALJ should be mindful of the requirement, as outlined above, that any finding of an ability to perform past relevant work be accompanied by a "specific and substantial inquiry into the relevant mental demands associated" with that work.

### d.   Substance Abuse

The Social Security Act establishes that "an individual shall not be considered disabled ... if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J).  Thus, "substance abuse becomes material to a benefit determination only after the claimant is found to be disabled" according to the sequential analysis. Roy v. Massanari, No. 3:01-CV-306, 2002 WL 32502101, at *2 n. 3 (D. Conn. June 12, 2002); see 20 C.F.R. § 404.1535(a).

The "plain text of the regulation" requires the ALJ to first use the standard sequential analysis to determine whether the claimant is disabled, "without segregating out any effects that might be due to substance use disorders." Day v. Astrue, No. 07-CV-157, 2008 WL 63285, at *5 (E.D.N.Y. Jan 3, 2008) (quoting Brueggemann v. Barnhart, 348 F.3d 689, 695 (8th Cir.2003)); see e.g., Orr v. Barnhart, 375 F.Supp.2d 193, 201 (W.D.N.Y. 2005)

(remanding to require the ALJ "to consider the ill effects that plaintiff's alcoholism had on her impairments and limitations" when determining the issue of disability and "only after finding that plaintiff is disabled, determine which impairments would remain if plaintiff stopped using alcohol").

Once the initial threshold disability determination is made, the ALJ then considers "whether the individual would continue to meet the definition of disability even if drug and/or alcohol use were to stop." SSR 82-60.  If the claimant would still meet the definition even if the substance abuse were to end, then substance abuse is not a contributing factor material to the disability determination. Id.   "The drug addiction and alcoholism requirements are imposed only where (1) the individual's impairment(s) is found disabling and drug addiction and/or alcoholism is a contributing factor material to the determination of disability, and (2) the same impairment(s) would no longer be found disabling if the individual's drug addiction or alcoholism were eliminated, as, for example, through rehabilitation treatment." Id.

The claimant bears the burden of proving that substance abuse is not a contributing factor material to the disability determination. White v. Comm'r of Soc. Sec., 302 F. Supp.2d 170, 173 (W.D.N.Y.2004).

In this case, Plaintiff acknowledged that she has a substance abuse problem. (T at 253).  She drinks one to two 12-packs of beer a week, smokes marijuana several times each week, and uses crack cocaine approximately every six weeks. (T at 244-45).  At the very end of his decision, the ALJ made the following statement: "Moreover, based on her testimony, if the claimant were unable to perform these jobs and/or meet the quality, attendance and production standard of competitive employment, by her own admission the

basis would be found upon her dependence to drugs and alcohol, a condition which would nonetheless preclude payment." (T at 29).

The Commissioner urges this Court to construe this statement as an alternative finding by the ALJ that Plaintiff was not entitled to benefits because her substance abuse was a contributing factor material to the disability determination.  This Court rejects this suggestion.  The ALJ's statement is mere dicta and is stated in a tone that implies it was intended as an aside and not as an alternative basis for denying benefits.  Moreover, the ALJ did not follow the framework discussed above for denying benefits based upon substance abuse.  This Court does not preclude the possibility that benefits might ultimately be denied on that basis, but the ALJ's decision does not contain the requisite findings or apply the applicable standard necessary to reach such a result.

### 3.   Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).  Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

### IV. CONCLUSION

21

For the foregoing reasons, it is respectfully recommended that Plaintiff's motion for judgment on the pleadings be granted, the Commissioner's motion be denied, that the decision of the Commissioner be reversed, and that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   January 19, 2011
         Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b)**

22

of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

January 19, 2011

Victor E. Bianchini
United States Magistrate Judge